## Simon A. Lichtenhein *vs.* The Boston and Providence Railroad Company.

In an action against warehousemen for the non-delivery of property bailed to them, the defence was that the property had been fraudulently taken from their custody without any negligence on their part, and the plaintiff did not claim that the property had been in fact delivered to any person. *Held*, that under such circumstances the plaintiff could not give evidence of the usage among other warehousemen of taking receipts from persons to whom property was delivered.

A warehouseman who fails to deliver property bailed to him, is bound to show that the loss occurred without a want of ordinary care or diligence on his part, but not necessarily the precise manner in which the loss occurred.

In an action against a railroad company, as warehousemen, for a failure to deliver property received by them, the judge instructed the jury, among other things, " that if the property was taken by mistake from the defendants' depot, and they exercised ordinary care in the matter, they would not be liable ; but if the defendants' agent delivered it by mistake to a wrong person, they would be answerable." *Held*, that such instructions taken together were no cause for a new trial.

Assumpsit to recover the value of a case of merchandise. The plaintiff claimed to charge the defendants only as warehousemen. The case was admitted to have been transported by the defendants over their railroad from Providence to Boston, and to have been received at the depot in Boston on the 18th of March, 1850; that it was called for on the 18th of April following by the plaintiff's agent, and could not then be found. The defendants introduced evidence tending to show

that the way bills of merchandise, received at the defendants' depot in Boston, were copied into a book, and that when merchandise was delivered from the depot, the name of the person to whom the merchandise was delivered, was inserted in pencil in the margin of said book, against the article delivered, and that this was the only evidence taken by the defendants of the delivery. The plaintiff contended that this was a careless mode of doing such business, and offered evidence that all the other railroad companies in Boston adopted a different mode, namely, that of taking receipts of the parties who received merchandise; but *Hoar*, J. in the court of common pleas, ruled that the evidence was inadmissible. The plaintiff further contended that the burden of proof was on the defendants to show not only the loss of the case of merchandise, but the manner of the loss. The judge ruled that to maintain the action, it was only necessary for the plaintiff, in the first instance, to show the receipt of the goods by the defendants and their failure to deliver them upon demand; that this imposed upon the defendants the duty of accounting for them; but that the defendants were not bound to show affirmatively in what precise manner the loss occurred; but only, if they were unable to prove how it occurred, to show clearly that they had exercised ordinary care respecting the goods, and that the loss did not happen from any negligence or want of ordinary care on their part. The judge further ruled, that if the case was taken by mistake from the depot, and the defendants exercised ordinary care in the matter, the defendants would not be answerable for a loss under such circumstances; but that if the agent of the defendants delivered it by mistake to a wrong person, the defendants would be responsible.

The jury found a verdict for the defendants, and the plaintiff excepted to the above rulings.

*H. C. Hutchins*, for the plaintiff.

*G. T. Curtis*, for the defendants. The defendants will rely on the general rule of law that warehousemen are bound to ordinary diligence, and that when this is shown, they are exonerated. *Thomas* v. *Boston & Providence Railroad Co.* 10 Met. 477. In assumpsit for the value of goods deposited in

a warehouse, where a demand and refusal to deliver has been shown, the burden is on the defendant to account for the goods. If he shows that they are lost, when demanded, the burden is then on the plaintiff to show negligence. *Harris* v. *Packwood*, 3 Taunt. 264; *Marsh* v. *Horne*, 5 Barn. & Cres. 322; *Beardslee* v. *Richardson*, 11 Wend. 26; *Schmidt* v. *Blood*, 9 Wend. 271; *Willard* v. *Bridge*, 4 Barbour, 361; *Foote* v. *Storrs*, 2 Barbour, 328. The ruling in the case at bar was more favorable to the plaintiff than the above, for it kept the burden on the defendants throughout, and made them show not only that the goods could not be found when called for, but that they had used due diligence.

DEWEY, J.* 1. As to the ruling of the presiding judge, excluding the testimony offered by the plaintiff tending to show that other railroad companies require written receipts from those to whom goods are delivered from the warehouse of the company, and that such mode was a better one than that of the defendants, which was writing the name in pencil of the party who received an article, in the margin of the book against the article delivered, we are of opinion that it furnishes no ground for a new trial. If the case had been one of actual delivery to a third person by the agent of the defendants, and the question had been whether the mode of the defendants furnished equal security for ascertaining to whom the article had been delivered, the question whether a general usage of railroads in this matter might not have been admissible to show negligence, might have required further consideration. But as to the present case, the proposed evidence was wholly irrelevant. There is nothing in the case to show that any delivery of the property took place as between the defendants and any individual. If their mode had been like that of other companies, yet no receipt would have been taken by them, because, upon their hypothesis, there had been no delivery. The position of the defendants, on the contrary, is that the goods were fraudulently abstracted from their custody.

2. The further question is one of more importance. It

* BIGELOW, J did not sit in this case.

arises upon a prayer for instructions to the jury that the burden of proof was on the defendants to show not only the loss of the goods from their warehouse, but the manner of their loss. The court so far adopted the prayer as to rule that the burden of showing the loss of the articles from their custody, and that such loss had not been occasioned by any want of ordinary care and diligence on their part, was on the defendants. The court, however, further ruled that they were not bound to show the precise manner in which the loss occurred, but that if unable to do this, they might exonerate themselves from that burden, by clearly showing that the loss did not happen from any negligence or want of care on their part. This, taken with the qualifications, is unobjectionable. But generally the carrier would have to show some mode in which the loss occurred, to sustain the burden on him, and establish the fact that the loss had not happened through his negligence. To hold as an abstract proposition that he must in all cases show the precise manner in which the goods were taken from him, or destroyed while in the warehouse, might in some cases charge him unreasonably.

3. We had more doubt at the argument upon another part of the instruction, namely, " if the article was taken by mistake from the depot, and the defendants exercised ordinary care in the matter, they would not be responsible." That doubt arose from the apprehension that this ruling might be taken to convey the idea that if the goods, while in the warehouse of the defendants, were taken away by a third person as his own, through mistake, although in the presence of the agents or servants of the warehousemen, and with their knowledge, but without a manual delivery by them, the defendants would not be liable therefor, if in their general care and supervision of their warehouse, they were guilty of no want of ordinary care and negligence.

As a matter of law, it must be held in a case like the present, that if there had been an actual delivery by the warehouseman of the goods to a third person by mistake, the warehouseman would be liable for the goods, and any attempt to show he was in the exercise of ordinary care and prudence,

would be unavailing. Such delivery to a third person, over-rules all such grounds of excuse, and charges the warehouse-man. And this seems to have been substantially stated by the presiding judge in the subsequent part of the instructions, where he says, " but if the agent of the defendants delivered it by mistake to a wrong person, the defendants would be responsible." We think, upon a proper construction of the whole charge, it must be understood that the defendants were to be charged in case there had been on the part of their agents a delivery to a third person, either actual or permissive. It would be a delivery for which the warehouseman would be chargeable to the owner, if by his silence, being present and knowing the same, he permitted the act of a third person, who should take the goods into his possession, and remove the same from the warehouse. Such permissive delivery, although entirely by a mistake as to the person, and under the supposition that he was the true owner, would not be the less a default of the defendants.

Taking the charge together, we understand the instruction to be, that if the article was taken by mistake by a third person from the depot, without the knowledge or implied assent of the warehouseman or his agents, the defendants, if they could show that they had in fact exercised ordinary care and diligence as to the custody of the goods, would not be respon-sible. If this be a correct view of the instructions, we perceive no sufficient ground for setting aside the verdict.

*Exceptions overruled.*